IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TANYA L., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 1:25CV1094 |
| | ) | |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER AND MEMORANDUM OPINION**
**OF UNITED STATES MAGISTRATE JUDGE**

The plaintiff, Tanya L. ("Tanya"), has sought review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income.[1] The Court has considered the certified administrative record and dispositive briefs from each party. Because substantial evidence supports the determination of the Administrative Law Judge ("ALJ"), the Court will deny Tanya's request for the award of benefits or for a remand, as set forth below.

I. PROCEDURAL HISTORY

In November 2020, Tanya filed an application for supplemental security income.[2] (Tr. 474-81.) The application was denied initially and upon reconsideration. (Tr. 244-52, 255-59.) After a hearing, the ALJ determined on February 2, 2023 that Tanya was not disabled under the Act. (Tr. 207-232, 134-77.) The Appeals Council granted a request for review, vacated the decision, and remanded the matter for further proceedings. (Tr. 235-39.) On remand, the same ALJ had a new administrative hearing, then a supplemental hearing, and

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. *See* Docket Entry 4. By Order of Reference, this matter was referred to the Undersigned to conduct all proceedings in this case pursuant to 28 U.S.C. § 636(c). *See* Docket Entry 7.

[2] Tanya applied for supplemental security income, which is not payable until the month after the application was filed or disability is established, whichever is later. 20 C.F.R. § 416.335. The relevant period therefore begins on the application date regardless of Tanya's alleged onset date.

then issued a new decision on March 10, 2025, again concluding that Tanya was not disabled under the Act. (Tr. 56-133, 24-55.) The Appeals Council denied a request for review, making the ALJ's second decision the final decision for the purposes of review. (Tr. 1-5.)

## II. STANDARD OF REVIEW

While Section 405(g) of Title 42 of the United States Code "authorizes judicial review of the Social Security Commissioner's denial of social security benefits," *see Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006), the scope of that review is specific and narrow, *see Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Specifically, review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Put simply: the issue before the Court is not whether Tanya is disabled but whether substantial evidence and a correct application of the relevant law supports the finding that she is not disabled. *See id.*

## III. THE ALJ'S DECISION

The ALJ followed the correct process, set forth in 20 C.F.R. § 416.920 to determine disability. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999).

"The Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012) (citing 20 C.F.R. §§ 416.920(a)(4), 404.1520(a)(4)).

> Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her [or his] past relevant work; and (5) if not, could perform any other work in the national economy.

*Id.* at 472. An adverse finding at any point in this five-step sequence forecloses a disability designation and ends the inquiry. *Id.* at 473. "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the Secretary to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education, and work experience."

*See Hunter*, 993 F.2d at 35 (internal citations omitted).

The ALJ determined at step one that Tanya had not engaged in substantial gainful activity since the application date of October 20, 2020. (Tr. 27.) The ALJ next found the following severe impairments at step two: "residuals from fractures of the left lower extremity and sacroiliac joint; degenerative joint disease, including right shoulder impairment; degenerative disc disease; obesity; asthma; obstructive sleep apnea; anxiety; depression." (Tr. 27.) At step three, the ALJ found that Tanya did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1. (Tr. 28.)

The ALJ next set forth Tanya's Residual Functional Capacity ("RFC") and determined that she could perform a reduced range of light work:

> in that she is limited to lifting, carrying, pushing, and pulling 20 pounds occasionally and 10 pounds frequently, sitting for six hours in an eight-hour workday, but standing and/or walking for two hours in an eight-hour workday. She can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch, crawl, and balance, as the latter is defined in the Selected Characteristics of Occupations, a companion guide to the Dictionary of Occupational Titles. She can occasionally reach overhead and frequently reach in all other directions with the dominant right upper extremity. She can tolerate occasional exposure to extreme cold, hazardous machinery, unprotected heights, and pulmonary irritants, such as dusts, fumes, odors, gases, and poor ventilation. Mentally, the claimant is limited to understanding, remembering, and carrying out simple and detailed instructions, can use judgment to make simple work-related decisions; and can sustain concentration, attention, and pace sufficient to carry out those simple and detailed instructions for two-hour intervals over the course of an eight-hour workday. She is limited to frequent contact with co-workers but can only occasionally perform tasks requiring teamwork, is limited to frequent contact with supervisors, and is limited to occasional interaction with the public[.] Additionally, she is limited to work in a low stress setting, which is defined to mean work involving: no paced production requirements, such as on an assembly line, where

> the worker does not control the pace of production, occasional changes in the work setting or routine, and no dealing with crisis situations as an essential function of the job.

(Tr. 31.)

At the fourth step, the ALJ determined that Tanya had no past relevant work. (Tr. 44.) Last, at step five, the ALJ concluded that there were other jobs in the national economy that Tanya could perform. (Tr. 45.)

## IV. DISCUSSION

Tanya's sole objection is that "[t]he ALJ failed to discuss obviously probative evidence in her decision and failed to form a logical bridge between the testimony, medical evidence, and her conclusion that [she] was only limited to occasional overhead reaching instead of occasional reaching in all directions when assessing the RFC." Docket Entry 10 at 4. As explained in greater detail below, this objection is unpersuasive and warrants no relief.

### A. Standard for the RFC Determination.

The RFC measures the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairments and any related symptoms (e.g., pain). *See* 20 C.F.R. § 416.945; *see also Dunn v. Colvin*, 607 Fed. App'x 264, 272 (4th Cir. 2015) (unpublished) (claimant's RFC is "[a] medical assessment of what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of his or her medically determinable impairment(s)") (internal citation omitted); *Hines*, 453 F.3d at 562. The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

"Social Security Ruling 96-8p explains that the RFC 'assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (internal quotations omitted). An ALJ need not discuss every piece of evidence in making an RFC determination. *See Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014). Yet, the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion." *Brown v. Commissioner*, 873 F.3d 251, 269 (4th Cir. 2017). "The RFC assessment must first

identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only [then] may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1.

The Fourth Circuit has held that "meaningful review is frustrated when an ALJ goes straight from listing the evidence to stating a conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (explaining that "a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion"). As noted earlier, the ALJ "must both identify evidence that supports his conclusion and 'build an accurate and logical bridge from [that] evidence to his conclusion.'" *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (alteration in original) (quoting *Monroe*, 826 F.3d at 189). An ALJ's failure to do so constitutes reversible error. *See Lewis v. Berryhill*, 858 F.3d 858, 868 (4th Cir. 2017). Where an ALJ's "analysis is incomplete and precludes meaningful review," remand is appropriate. *Monroe*, 826 F.3d at 191.

Moreover, "[a]n ALJ assesses the credibility of a claimant's subjective statements about his condition as part of the RFC assessment," *Ladda v. Berryhill*, 749 F. App'x 166, 170 (4th Cir. 2018) (unpublished), using a two-part test: "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged,'" *Craig*, 76 F.3d at 594 (citing 20 C.F.R. §§ 416.929(b), 404.1529(b)).

If such an impairment exists, the ALJ must then consider, as the second prong of the test, all available evidence, including the claimant's statements about pain, to determine whether the claimant is disabled. *Id.* at 595-96. In so doing, the ALJ need not credit them if they conflict with the objective medical evidence or if the underlying impairment could not reasonably be expected to cause the symptoms alleged. *See id.* Where the ALJ has considered the relevant factors, *see* 20 C.F.R. § 416.929(c)(3), and heard the claimant's testimony and observed his or her demeanor, the Court will defer to the ALJ's determination regarding those subjective complaints. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).

Those relevant factors include:

(i) [Plaintiff's] daily activities;

(ii) The location, duration, frequency, and intensity

of [Plaintiff's] pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate his pain or other symptoms;

(v) Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of his pain or other symptoms;

(vi) Any measures [Plaintiff] use[s] or [has] used to relieve his pain or other symptoms (e.g., lying flat on [her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

B. The ALJ's Reaching Restrictions Are Legally Correct and Well-Supported.

As noted earlier, Tanya's sole objection is that "[t]he ALJ failed to discuss obviously probative evidence in her decision and failed to form a logical bridge between the testimony, medical evidence, and her conclusion that [Tanya] was only limited to occasional overhead reaching instead of occasional reaching in all directions when assessing the RFC." Docket Entry 10 at 4. In support, Tanya notes that the vocational expert testified that if limited to occasional reaching in all directions with her right upper extremity, not just overhead, then she would be unable to perform the jobs the ALJ identified. (*Id.* citing Tr. 85.)

This objection is not persuasive. The ALJ relied on substantial evidence in 1) including reaching restrictions in the RFC; 2) concluding that no additional reaching restrictions were required; and 3) concluding that any shoulder impairment was not disabling. And the determination is susceptible to judicial review. First, for example, the ALJ considered both Tanya's degenerative disc disease in the cervical and lumbar spine and her degenerative joint disease in the right shoulder as impairments limiting her ability to reach. (Tr. 27, 34-35.) More specifically, the ALJ took note of 2022 MRI imaging which showed generally mild to moderate degenerative changes. (Tr. 34, 4653-54.) The ALJ also took note that imaging of Tanya's cervical spine demonstrated straightening of the normal cervical lordosis and multilevel degenerative changes with facet arthrosis and foraminal stenosis. (Tr. 34, 4653-54.)

Second, the ALJ further explained that Tanya's right shoulder pain did not "emerge[ ]" until February 2023, citing x-ray imaging of the right shoulder demonstrating degenerative changes of the acromioclavicular joint. (Tr. 35, 5872, 5874.) That is, the pain emerged a few years into the relevant period, which was from October 20, 2020 (the application date) (Tr. 27) through March 10, 2025 (the date of the ALJ's decision) (Tr. 46).

Third, the ALJ observed that in 2023 specialists found Tanya's reported pain was "not consistent with MRI findings." (Tr. 35, 7799 ("I reviewed the findings with the patient. We discussed the MRI while reviewing the images. Her pain is not consistent with her MRI findings."), 8088 ("I just took a look at your MRI and also the radiology report. There doesn't appear to be a labral tear (which is what we discussed this could potentially be during your appointment). Additionally, there do not appear to be any other abnormal findings to explain your symptoms.").)

Fourth, the ALJ made note of Tanya's daily living activities, which supported the conclusion that though her shoulder impairment was severe, it was not disabling. For example, the ALJ found that Tanya cared for her three young children, prepared simple meals, did light housework, and retained the ability to shop in stores. (*See, e.g.*, Tr. 30, 35-37, 42-43, 556-58, 585, 847, 4250, 4341 (9/14/21, "she has to do everything on her own"), 4360 (7/13/21, "reveals that that she has 3 children she is taking care of her 3 children . . . she has to do everything on her own"), 8579 ("Children dependent on the patient for primary care.").) Tanya does not specifically challenge these findings, which provide further support for the ALJ's analysis. *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief or by failing to 'develop [the] argument'—even if [the] brief takes a passing shot at the issue.") (quoting *Brown v. Nucor Corp.*, 785 F.3d 895, 923 (4th Cir. 2015)).

Fifth, the ALJ acknowledged that Tanya asserted lifting restrictions. (Tr. 32.) However, she also testified at the administrative hearing, and in fact demonstrated, that she could reach to about shoulder level without difficulty. (Tr. 32, 36, 71-72.) While not dispositive, or even substantial evidence on its own, this additional evidence also supports the ALJ's assessment.

Sixth, the ALJ also evaluated the medical opinions. In doing so, the ALJ explained at length why no additional restrictions were warranted in the RFC determination. (Tr. 38-42.) This analysis included the September 2024

medical opinion of Cristin Ferguson, MD, who gave a summary endorsement of "permanent" total disability; the ALJ disregarded this analysis because it failed to set forth functional limitations and expressed an opinion on an issue reserved to the commissioner. (Tr. 28, 8926, 9310.) Dr. Ferguson did not recommend any specific reaching restrictions. (Tr. 8926, 9310.) The ALJ was likewise not persuaded Dr. Ferguson's September 2022 medical opinion, which concluded that Tanya could perform less than the full range of sedentary work with additional restrictions. (Tr. 41, 5580-82.) The ALJ found this opinion inconsistent with the record and with Dr. Ferguson's own treatment notes. (Tr. 41-42.) Again, Dr. Ferguson did not recommend any reaching restrictions. (Tr. 41, 5580-82.)

Seventh, the ALJ considered the administrative medical findings of the non-examining state agency physicians. For example, the ALJ found partially persuasive the medical findings of non-examining state agency physician Celeste Williams, M.D. and further found persuasive the medical findings of non-examining state agency physician Steven Levin, M.D. (Tr. 39, 185-87, 198-200.) Neither set forth a reaching limitation and both recommended a reduced range of light work, which the ALJ largely adopted. (Tr. 39, 185-87, 198-200.) Tanya, for her part, has not challenged the ALJ's assessment of any of these medical opinions or findings and has thus waived the right to do so. *See Grayson O Co.*, 856 F.3d at 316. Nor has she pointed to any contrary medical opinion suggesting that she had right shoulder reaching limitations, much less restrictions beyond those set forth in the RFC. The ALJ was "entitled to rely not only on what the record says, but also on what it does not say." *Lane v. Comm'r of Soc. Sec.*, 100 F. App'x 90, 95 (3d Cir. 2004) (unpublished) (citing *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983)); *see also Tutwiler v. Kijakazi*, 87 F.4th 853, 860 (7th Cir. 2023) ("The lack of an opposing medical opinion makes it difficult for us to find that the ALJ misjudged the evidence so significantly as to warrant reversal.").

Finally, the ALJ did not ignore Tanya's alleged shoulder limitations. In fact, she largely credited Tanya's allegations and only partially discounted them. Specifically, the ALJ explained that a limitation to occasional right overhead reaching and frequent reaching in other directions with the right arm accommodated Tanya's shoulder impairment. (Tr. 31.) In further support, the ALJ pointed to Tanya's treatment primarily with physical therapy and home exercises, as well as subsequent imaging demonstrating mild changes and synovitis in the shoulder. (Tr. 31, 35, 5993, 5778, 9044.) For all of these reasons, the ALJ here set forth a logical path

supported by substantial evidence between her findings and the evidence of record.[3]

Tanya points to parts of two medical records and contends that the ALJ materially erred by failing to address them. Docket Entry 10 at 6. But these objections fail.

First, an ALJ is not obliged to discuss every bit of evidence in the record. *See Reid*, 769 F.3d at 865. Second, the ALJ repeatedly stated that she considered all of the evidence. (Tr. 25 ("After careful consideration of all the evidence"), 27 ("After careful consideration of the entire record"), 31 (same), 33 ("After careful consideration of the evidence").) The Court is entitled to rely on these representations absent a compelling reason to the contrary, which Tanya has not identified. *See Grubby v. Astrue*, No. 1:09cv364, 2010 WL 5553677, at *6 (W.D.N.C. Nov. 18, 2010) (citing *Rappaport v. Sullivan*, 942 F.2d 1320, 1323 (8th Cir. 1991) (concluding that because the ALJ stated that he considered the entire record in making his decision, the court could reject the claim that the claimant's wife's testimony was not considered)).

Third, the record here was voluminous, weighing in at 9,313 pages. (Tr. 1-9313.) The ALJ in turn issued a detailed 23-page single spaced decision. (Tr. 24-46.) There is simply no way an ALJ could realistically discuss each medical record or treatment note given the voluminous record.

And, fourth, even setting all this aside, the ALJ specifically addressed or identified most or all of the evidence to which Tanya now points. Specifically, Tanya faults the ALJ for failing to discuss Dr. Ankur Patel's October 4, 2024 statement about her updated cervical MRI from September 2024. Docket Entry 10 at 6 *referencing* Tr. 9037. However, this imaging study does not demonstrate

[3] Tanya does not appear to challenge the ALJ's assessment of her subjective complaints and instead largely couches her objection as a failure to discuss probative evidence. However, a subjective complaints assessment would also fail. The ALJ completed the two-step *Craig* analysis. The ALJ stated that she had carefully considered the evidence and found that Tanya's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 33.) The ALJ therefore discharged her duty under the first step of the *Craig* analysis. Then, at step two, the ALJ decided that Tanya's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 33.) The ALJ then gave numerous good reasons, supported by substantial evidence and susceptible to judicial review, in support of this conclusion.

any significant findings which were not previously seen and discussed in the record. (*Compare* Tr. 9037 ("MRI cervical spine is significant for facet arthrosis on the right at C2-C3, C3-C4 and C4-C5") *with* Tr. 34, 4653-54 (discussing 2022 MRI findings establishing degenerative changes with facet arthrosis and foraminal stenosis).) The ALJ had no obligation to discuss what were essentially duplicative findings but still did specifically discuss this medical record, pinpoint citing to the exact page to which Tanya now points. (*Compare* Tr. 28 citing 30F/29, Tr. 9037 (noting that an "MRI from Fall 2024 revealed only diffuse facet arthritis, but no apparent or at least acute neurological involvement, such as root impingement or cord compromise") *with* Docket Entry 10 at 6 citing Tr. 9037, Ex. 30F/29.)

Tanya contends that this was insufficient. In support, she points more specifically to Dr. Patel's statement within this October 4, 2024 treatment note observing that "significant . . . facet arthrosis on the right" "is likely the etiology of her pain." Docket Entry 10 at 6 citing Tr. 9037. Tanya faults the ALJ for failing to "evaluate the later findings and statement of her specialist that her right-sided neck and upper shoulder symptoms were coming from her significant facet arthrosis of her cervical spine, not just her shoulder itself." Docket Entry 10 at 6 *citing* Tr. 9037.

But Dr. Patel's statement regarding the "etiology" of Tanya's pain does not specifically state that facet arthrosis of the cervical spine is the cause of her shoulder pain. (Tr. 9037.) And even setting this entirely aside, the ALJ acknowledged both Tanya's significant facet arthrosis as well as her shoulder, back, and neck pain. This was one of the reasons the ALJ included reaching restrictions in the RFC. *See also Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (endorsing that an individual need not be pain-free to work). Tanya has not pointed to probative evidence that the ALJ failed to consider or failed to meaningfully address.

Tanya further faults the ALJ for omitting a discussion about "how Dr. Patel attempted to perform a cervical medial branch block procedure on October 17, 2024 after concluding that she had failed conservative treatment, but the procedure had to be aborted due to her experiencing a drop in blood pressure and heart rate." Docket Entry 10 at 6 *citing* Tr. 9035-37. She contends that the ALJ's failure to discuss this evidence "was very harmful because the ALJ reasoned generally that [Tanya] was not as limited as alleged because her imaging did not reveal abnormalities which were consistent with the symptoms she experienced in her neck and upper right shoulder and that she was only being maintained on conservative treatment. This

probative evidence which she failed to discuss proves both assumptions are factually incorrect." *Id.* at 6-7.

Again, this objection fails. The planned injection, referenced in the October 4, 2024 treatment note the ALJ cited, treated Tanya's cervical degenerative disc disease rather than her shoulder. (Tr. 9034, 9036, 9037 (referencing cervical medial branch block).) And the ALJ's statement that Tanya's treatment was conservative only referenced her right shoulder pain, not her cervical degenerative disc disease, so there was no mischaracterization of the record. (Tr. 35) ("[T]he undersigned has cautiously recognized a new severe impairment, though reduction to occasional right overhead reaching adequately accommodates conservative treatment with physical therapy and home exercises.").)

Moreover, the ALJ did consider Tanya's history of treatment with physical therapy, medication, and injections. (Tr. 33, 35, 39, 43.) And the ALJ also specifically noted that she considered "the combined effects of the claimant's severe and non-severe impairments." (Tr. 44.) Tanya has failed to identify an error, much less a prejudicial one.

Tanya also suggests that the ALJ "cherry pick[ed]" the findings from the 2022 MRI discussed above, as the ALJ described the findings as generally being mild, while the MRI report showed additional moderate to severe findings. Docket Entry 10 at 8. This objection is also unpersuasive. First, the ALJ acknowledged the moderate findings (Tr. 34 ("imaging of both segments obtained in 2022 that show mild to moderate degenerative changes").) Moreover, the ALJ considered all of the MRI findings, noting facet arthrosis and foraminal stenosis, the latter of which was described as "severe" on the left at two levels of the cervical spine but not described as "severe" in the summary "impression" of the findings. (Tr. 34, *citing* Tr. 4654.) The Fourth Circuit has remanded for "cherry-picked" evidence where "the ALJ's opinion seizes on insignificant inconsistencies in the treatment record while overlooking the record's broader import." *Testamark v. Berryhill*, 736 F. App'x 395, 399 (4th Cir. 2018) (unpublished). That is not the case here.

Tanya further asserts that "the ALJ erred by failing to explain why she at least partially credited [her] testimony regarding her difficulty reaching overhead by restricting this activity to being done only occasionally in the RFC, but did not similar[ly] restrict reaching forward and in other directions to only occasionally in the RFC, despite [her] testimony that she also struggled with reaching forward due to the strain it puts on her upper back and shoulder." Docket Entry 10 at 9. This objection is also unpersuasive. The ALJ gave good

reasons for the reaching restrictions included in the RFC, including the ALJ's evaluation of Tanya's treatment history, her admissions during the administrative hearing, the medical opinion and administrative medical finding evidence, and her activities of daily living.

Finally, Tanya summarizes evidence explaining why her allegations were fully consistent with the evidence. *Id.* at 4-5, 9-10. But some of this evidence is not particularly favorable to her. For example, she cites to a May 2024 physical therapy evaluation to demonstrate "10/10 pain in her right sided neck area which was specifically noted to be aggravated by using her right arm and moving her neck generally." *Id.* at 10 *citing* Tr. 8807-08. But this evaluation further notes that Tanya "reports 10/10 pain but does not appear to be in any distress." (Tr. 8011.). If anything, this sort of evidence, in which a claimant alleges the maximum pain possible but demonstrates no distress, tends to bolster the ALJ's analysis rather than undermine it. In fact, the ALJ made precisely this point elsewhere in her decision. Tr. 33 (ALJ "recogniz[ing] some disparity between subjective complaints and objective findings, as exemplified by reporting of 9.5/10 pain , but notes the lack of observed distress on accompanying examination until asked about pain").

Second, even if portions of the record could support a different finding, the substantial evidence standard does not demand that all the evidence align. "'Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ.'" *Drumgold v. Commissioner*, 144 F.4th 596, 605 (4th Cir. 2024) (citations omitted). In other words, "[t]he substantial evidence standard 'presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Dunn*, 607 F. App'x at 266. Here, the ALJ pointed to more than substantial evidence in concluding that Tanya did not have disabling reaching restrictions. No more is required. For all these reasons, Tanya' sole objection has no merit.[4]

In the end, Tanya asks the Court to reweigh the evidence, contrary to the deferential substantial evidence standard of review. *Craig*, 76 F.3d at 589 (noting that the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner). The Court will not do this and will instead affirm the ALJ's decision.

---

[4] The majority of case law Tanya cites, *see* Docket Entry 10 at 7-8, is unpublished and from out of this district. None of it is factually analogous. *See id.*

V. CONCLUSION

After careful consideration of the evidence of record, the Court finds that the Commissioner's decision is legally correct, supported by substantial evidence, and susceptible to judicial review.

Accordingly, **IT IS HEREBY ORDERED** that the final decision of the Commissioner is upheld.

JoAnna Gibson McFadden
United States Magistrate Judge

October 20, 2026